EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JORGE FRAU, acusado y apelante.

Núm. 6700.—*Sometido:* Febrero 15, 1938. *Resuelto:* Febrero 25, 1938.

*C. Iriarte, F. Fernández Cuyar* y *Héctor González Blanes,* abogados del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

Eℓ Juez Asociado Señor Travieso emitió la opinión del tribunal.

En 20 de junio de 1936 el Fiscal de San Juan formuló acusación contra Jorge Frau por un delito de infracción de las disposiciones de la Ley núm. 24 de 20 de abril de 1928 (Leyes de 1928, pág. 167), consistente en que "ilegal, voluntaria y maliciosamente vendía, ofrecía y tenía en venta, y tenía almacenado, café adulterado con cereales, con el fin de dedicarlo al consumo humano."

En enero 13, 1937, el acusado solicitó el sobreseimiento de la causa porque habiéndose radicado la denuncia el 20 de junio de 1936, el juicio debió celebrarse en o antes del 18 de octubre del mismo año, de acuerdo con lo dispuesto por el artículo 448, inciso 2°., del Código de Enjuiciamiento Criminal. Declarada sin lugar dicha moción, se celebró el juicio el 19 de enero de 1937 y el acusado fué declarado culpable y condenado al pago de $25 de multa. El 23 de septiembre de 1936, fecha señalada originalmente para el juicio, el fiscal, con permiso de la corte y con la oposición de la defensa, enmendó la acusación, cambiando la frase "café adulterado con cereales" por la de "café adulterado con cáscara del mismo fruto."

El acusado apelante señala tres errores. En el tercer señalamiento sostiene que la culpabilidad del acusado no ha sido establecida fuera de toda duda razonable por ser la prueba claramente insuficiente.

La prueba fundamental del Pueblo consistió en la declaración del Dr. Rafael del Valle Sárraga, químico y bacteriólogo del Departamento Insular de Sanidad. Éste declaró en substancia: que hizo un análisis de la muestra de café tomada en el establecimiento del acusado; y que apareció adulterada con una pequeña cantidad de cáscara del mismo grano. Y repreguntado por la defensa contestó que había usado la frase "pequeña adulteración" porque la adulteración venía siendo algo así como un 7 por ciento de cáscara con respecto a la totalidad del café; que el café normalmente

tiene una cantidad de fibra cruda una vez que está descascarado; que el 12 por ciento de fibra cruda se considera como standard en un café normal; que ese promedio puede ser menor o mayor, dependiendo de multitud de factores que influyen en la cantidad de fibra cruda. Preguntado por la defensa si en este caso era significativo el tanto por ciento que arrojó el análisis de una adulteración activa, el testigo contestó:

"En este caso los datos están en el *border line* entre lo que constituye una contaminación accidental y una adición intencionalmente. Más bien está en la zona de la adulteración intencional, *sin que con esto el perito quiera decir que ése haya sido el caso*. Lo que quiero decir con ello es que si ha sido una contaminación indudablemente que ha habido negligencia o descuido notable o quizás algún defecto muy serio en el procedimiento mismo que ha dado lugar a que esta fibra haya estado en cantidad . . ." (Bastardillas nuestras.)

Y más adelante, al ser preguntado si como resultado del análisis podría él decir que en este caso había habido una adulteración activa o intencional, contestó que no podía asegurarlo.

Como testigo de la defensa declaró el perito químico Sr. Ángel M. Pesquera al efecto de que él hizo el examen del café y obtuvo una cantidad de 12.90 por ciento de fibra cruda; que esa cifra no significa de por sí adulteración activa, por ser una cifra normal y más por debajo de lo normal en algunos casos; que no existe un standard legal en cuanto a la cantidad de fibra cruda que puede tener el café tostado y molido; que el Departamento Federal en Washington considera la cifra 12.90 por ciento como normal; que un café debe considerarse adulterado con cáscara cuando contenga más de 15 por ciento de fibra cruda.

No aparece del récord prueba alguna que tienda a demostrar que el acusado adulteró intencionalmente el café.

La prueba pericial es a nuestro juicio insuficiente para justificar una sentencia de culpabilidad. ¿Cómo es posible que el juzgador quede convencido fuera de toda duda razona-

ble de la culpabilidad del acusado, cuando el mismo perito del Pueblo admite que el caso está en el *border line,* en la línea divisoria, y no se atreve a asegurar que se trata de una adulteración intencional?

La insuficiencia de la prueba es a nuestro juicio tan patente que consideramos nuestro deber *revocar la sentencia recurrida.*

El Juez Asociado Señor Córdova Dávila no intervino.